IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER F. WINCHENBAUGH AND HUGH E. MCGEE, III | § § § § § § § § § § § | CASE NO. _____ |
| *Petitioners,* | | |
| v. | | |
| ROBERT L. CABES, JR., | | |
| *Respondent.* | | |

## PETITIONERS CHRISTOPHER F. WINCHENBAUGH AND HUGH E. MCGEE'S PETITION TO ENJOIN ARBITRATION

Petitioners Christopher F. Winchenbaugh ("Winchenbaugh") and Hugh E. McGee, III ("McGee)" (and collectively "Petitioners"), by and through their undersigned attorneys, Baker & Hostetler LLP, allege as follows in support of their Petition to Enjoin Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order enjoining the employment arbitration brought by Respondent Robert L. Cabes, Jr. ("Cabes" or "Respondent") against Petitioners before the American Arbitration Association ("AAA"), Case No. 01-21-0004-2983 ("Demand").

### SUMMARY OF THE PETITION

1.  This is an action to enjoin Cabes' attempt to improperly assert claims against Petitioners in a pending AAA arbitration.

2.  Cabes, a former employee of Intrepid Financial Partners, L.L.C. ("Intrepid"), filed the Demand on June 15, 2021 against Petitioners and Intrepid. A copy of the Demand is attached as **Exhibit A** and is incorporated by reference. Cabes, however, improperly filed the Demand against Petitioners. A simple review of the Demand shows that Cabes' allegations rest on a theory of employment discrimination. Indeed, of the eight counts asserted, seven include employment

1

discrimination related claims, ranging from alleged violations of the Americans with Disabilities Act, 42 U.S.C. §12101 (the "ADA") and the New York City Human Rights Law ("NYCHRL"), to the Employee Retirement Income Securities Act ("ERISA").

3. *Intrepid* and Cabes did enter into an employment agreement. By an offer letter dated June 16, 2016, *Intrepid* offered Cabes a Managing Director position. The offer letter attached a Non-Competition and Confidentiality Agreement (collectively with the offer letter, "Employment Agreement"), which provides for arbitration of his Employment Claims, as defined below. There is no dispute there.

4. Petitioners, however, never agreed to arbitrate any of Cabes' Employment Claims. "[A]rbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Under the Employment Agreement, only *Intrepid* and Cabes agreed to submit employment related disputes to arbitration. As further explained below, there is no contractual basis for Cabes to arbitrate his Employment Claims against Petitioners.

5. Recognizing this deficiency, Cabes includes a tenuous breach of contract claim based on an Admission Letter and operating agreement for Intrepid Private Equity Fund GP, LLC (the "GP"). The GP's operating agreement, the Amended and Restated Limited Liability Company Agreement of Intrepid Private Equity Fund GP, LLC, dated July 17, 2015 ("GP Operating Agreement"), which governs the interests of its members, including Petitioners and Cabes, only provides that disputes relating *to the agreement* are subject to arbitration. Cabes' attempt to force Petitioners into arbitration through a breach of the GP Operating Agreement fails because Cabes' Employment Claims are not governed by the GP's Operating Agreement's arbitration provision.

Accordingly, asserting a breach of contract claim based on the GP Operating Agreement does not render Cabes' Employment Claims arbitrable against Petitioners.

6.   Given that Petitioners never agreed to arbitrate Cabes' Employment Claims, a stay of the AAA arbitration is necessary.

### I.   JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 4, because the subject matter of the suit arising out of the controversy between the parties involves claims that arise under the ADA, 42 U.S.C. §12101, FFCRA, and ERISA § 501.

8.   Venue is proper pursuant to 9 U.S.C. § 4. The AAA arbitration, which this Petition seeks to enjoin, is currently pending in Texas. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Cabes resides in the Southern District of Texas. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Petitioners' claims occurred in the Southern District of Texas.

### II.   PARTIES

9.   Petitioner Christopher F. Winchenbaugh is an individual who resides in Weston, Massachusetts. Winchenbaugh may be served with all papers in this action through the undersigned attorneys.

10.   Petitioner Hugh E. McGee, III is an individual who resides in Houston, Harris County, Texas. McGee may be served with all papers in this action through the undersigned attorneys.

11.   Respondent Robert L. Cabes, Jr. is an individual who resides in Houston, Harris County, Texas. Cabes may be served through his attorney of record in the arbitration matter, Mark D. Downey 1910 Pacific Ave, Suite 15650 Dallas, Texas 75201, at his residence 3663 Del

Monte Drive, Houston, TX 77019, or anywhere else he may be found.

### III. FACTUAL BACKGROUND

12. Intrepid is an independent merchant bank that provides a full complement of advisory and investment services for U.S. energy businesses.

13. Petitioners founded Intrepid in 2015. Prior to Intrepid, Mr. McGee spent over 20 years at Lehman/Barclays and served as Chief Executive Officer of Barclays, Americas. Mr. Winchenbaugh also spent 20 years at Lehman/Barclays and served as Chief Operating Officer of Barclays, Americas. After spending over two decades with larger financial institutions, Petitioners sought to create something new for clients—a boutique firm that prioritized maintaining and cultivating relationships with its clients for the long-term. Petitioners opened Intrepid with only three employees, including Petitioners. Intrepid now employs over 40 professionals.

14. Intrepid hired Cabes in June 2016 as a Managing Director with a generous starting salary and opportunity to receive a discretionary bonus and profit sharing. In connection with his Intrepid employment, Cabes signed the Employment Agreement and agreed to its terms. The Employment Agreement includes the following arbitration provision, which governs "Employment Related Matters" between Intrepid and Cabes:

> Subject to the provisions of Section 6 hereof, any dispute, controversy, or claim between Executive and the Company [Intrepid] arising out of or relating to or concerning the provisions of this Agreement, or any agreement between Executive and the Company [Intrepid] relating to or arising out of Executive's employment with the Company [Intrepid] or otherwise concerning any rights, obligations or other aspects of Executive's employment relationship in respect of the Company [Intrepid] ("**Employment Related Matters**"), shall be finally settled by arbitration in New York City before, and in accordance with the rules of the New York Stock Exchange ("NYSE") or, if the NYSE declines to arbitrate the matter, the American Arbitration Association (the "AAA") in accordance with the commercial arbitration rules of the AAA.

Employment Agreement, ¶ 14 (emphasis added).

15. The Employment Agreement explicitly states that:

> THIS AGREEMENT (the "Agreement"), is made and entered into as of June 16, 2016, **by and between Intrepid Financial Partners, L.L.C.**, a Delaware limited liability company (the "Company"), **and Robert Cabes** (the "Executive").

*Id*. at 1 (emphasis added).

16. Winchenbaugh signed the Employment Agreement on behalf of *Intrepid only*, not in his individual capacity.

17. In 2015, Petitioners also formed an investment fund, Intrepid Private Equity Fund I, L.P. (the "Fund"), with the GP as its general partner and Petitioners as the initial limited partners.

18. By an Admission Letter dated October 23, 2018 ("Admission Letter"), Cabes was admitted as an Employee Member of the GP.

19. The Admission Letter provided that Cabes' rights as an Employee Member were governed by the terms of the Admission Letter and the GP Operating Agreement. In addition, the Admission Letter also provides that "Any dispute or controversy arising under or in connection with this Admission Letter must be settled exclusively by arbitration as provided by Section 10.15 of the LLC Agreement [GP Operating Agreement]."

20. The GP Operating Agreement contains its own governing arbitration provision in Section 10.15, which provides:

> To the fullest extent not prohibited by law, any dispute, controversy or claim arising out of or relating to **this Agreement** or to the Company's [GP's] affairs or the rights or interests of the Members, including, without limitation, the validity, interpretation, performance, breach, alleged breach or termination of this Agreement, whether arising during the existence of the Company [GP] or at or after its termination or during or after the liquidation of the Company[GP], shall be settled by arbitration in New York, New York (or, if applicable law requires some other forum, then such other forum) in accordance with the rules then obtaining of the American Arbitration Association. . . .

GP Operating Agreement, §10.15 (emphasis added).

5

21. The GP Operating Agreement explicitly states:

> This **AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (the "Agreement") of INTREPID PRIVATE EQUITY FUND GP, LLC (the "Company")**, dated as of July 17, 2015, **is entered into by and among (i) the Members** . . . as of the date hereof, . . . and (iii) such other parties as may from time to time be admitted as Members of the Company [GP] after the date hereof in accordance herewith.

*Id*. at 1 (emphasis added).

22. The GP Operating Agreement defines "Members" as

> the Managing Member, the other Founding Members and Employee Members, the Investing Member and any other person or entity admitted to the Company [GP] as an additional or substituted member of the Company [GP] in accordance with the provisions of this Agreement.

*Id*. at Article I – Definitions, p. 8.

23. Petitioners are Founding Members under the GP Operating Agreement.

24. Cabes' 2019 and 2020 mid-year and year-end reviews all reflected poor performance. As such, Cabes did not receive a discretionary bonus in either 2019 or 2020. After two years of poor individual performance and poor performance and lack of profitability with respect to the investment business Cabes managed, on February 25, 2021, Intrepid informed Cabes that his base salary going forward would be reduced, but that his vested interest as an Employee Member of the GP would be unaffected by the salary adjustment.

25. Following the February 25th conversation, in an effort to resolve the discrepancy between Intrepid's business needs and Cabes' dissatisfaction with his salary reduction, Intrepid engaged in multiple rounds of salary negotiations with Cabes through early March 2021.

26. On March 12, 2021, counsel for Cabes submitted a "written demand" to Intrepid specifically relating to Cabes' *employment*.

27. On March 19, 2021 Cabes notified Intrepid of his resignation, which Intrepid accepted on March 20, 2021, "effective immediately."

28. Following his resignation, Cabes filed an employment discrimination claim with the EEOC on April 19, 2021 and filed his AAA Demand on June 15, 2021.

29. Cabes' AAA Demand alleges the following employment based claims ("Employment Claims"):

(1) discrimination based association in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 (the "ADA");

(2) unlawful retaliation in violation of the ADA;

(3) discrimination based on caregiver status in violation of the New York City Human Rights Law ("NYCHRL");

(4) unlawful retaliation in violation of the Families First Coronavirus Response Act ("FFCRA");

(5) breach of employment agreement;

(6) constructive discharge; and

(7) discrimination in violation of the Employee Retirement Income Securities Act ("ERISA").

30. The Demand only refers to the Employment Agreement as a basis for arbitration. *See* Ex. A, at ¶ 3.

31. On June 24, 2021 the AAA requested a copy of the alleged relevant arbitration agreement.

32. On June 25, 2021, in addition to the Employment Agreement referenced in the Demand, Cabes also submitted the Admission Letter and GP Operating Agreement to the AAA as an additional alleged basis for arbitration.

33. The Employment Agreement was executed between Intrepid Financial Partners, L.L.C., and Robert Cabes <u>only</u>, and there is no language in the Employment Agreement requiring or permitting arbitration of the Employment Claims against Petitioners.

34. Winchenbaugh signed the Employment Agreement on behalf of Intrepid, in a representative capacity.

35. Petitioners are not bound by the Employment Agreement, and the Court must stay the arbitration as to Cabes' Employment Claims against Petitioners as individuals. *See, e.g., Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 352 (S.D.N.Y. 2018); *see also* 9 U.S.C. § 4; Tex. Civ. Prac. and Rem. Code § 171.023.

36. The GP Operating Agreement is an LLC operating agreement for the GP, whose purpose is to serve as the general partner of the Fund.

37. The GP Operating Agreement provides for the arbitration of "any dispute, controversy or claim arising out of or relating to this Agreement or to the Company's [GP's] affairs or the rights or interests of the Members, including, without limitation, the validity, interpretation, performance, breach, alleged breach or termination of this Agreement. . . ." GP Operating Agreement, at § 10.15.

38. The arbitration provision in the GP Operating Agreement is explicitly limited to disputes relating to the agreement itself and membership interests. Whether Intrepid violated employment discrimination laws or breach the Employment Agreement is completely separate and distinct from the GP's role with respect to the Fund and Petitioners' and Cabes' membership interests in the GP.

39. Cabes' Employment Claims against Petitioners do not logically arise out of or relate to the GP Operating Agreement and are not covered by its arbitration provision.

40. Cabes' Demand is improperly cumulative, and neither the GP Operating Agreement nor the Employment Agreement include an agreement to cumulate arbitrations.

41. Petitioners did not consent to a cumulation of disputes in a single arbitration nor impliedly agreed to arbitrate separate disputes in one arbitration.

42. Petitioners will be harmed if the arbitration is not stayed before the AAA answer deadline. If the Court denies Petitioners' request, then Petitioners must either appear before the AAA and risk a waiver of their objection to the AAA's exercise of jurisdiction or risk a default judgment.

## CAUSE OF ACTION
### (Permanent Injunction Pursuant to 9 U.S.C. § 4)

43. Petitioners repeat and re-allege paragraphs 1 through 42 hereof, as if fully set forth herein.

44. Petitioners seek an order enjoining the AAA arbitration as to Petitioners.

45. Petitioners are not parties to the Employment Agreement, have not consented to arbitration of Cabes' Employment Claims, and have not consented to the authority of the AAA over them with respect to Cabes' Employment Claims.

46. Pursuant to 9 U.S.C. § 4, this Court has the authority to enjoin the AAA arbitration.

47. This Court should exercise its authority to relieve Petitioners from being forced to proceed with an Arbitration to which they did not consent to be bound.

48. No previous application has been made to this or to any other Court for the relief sought herein and no other provisional remedy has been sought in this or any other Court.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request the following relief:

a. The Court issue an order assuming jurisdiction of this dispute, and staying Case

      Number 01-21-0004-2983 pending before the American Arbitration Association;

b.  The Court issue an order staying Petitioners' obligation to file an answering statement in Case Number 01-21-0004-2983 pending before the American Arbitration Association;

c.  The Court issue an order that no further action shall be taken by any party in that arbitration proceeding without leave of this Court, including without limitation the selection and appointment of an arbitrator;

d.  The Court issue an order finding Respondent's Employment Claims are not arbitrable as against Petitioners for lack of an enforceable arbitration agreement and dismissing Petitioners from the arbitration proceeding with respect to those claims; and

e.  The Court grant any other relief to which Petitioners are entitled.


Dated: July 29, 2021                      Respectfully submitted,

By:   /s/ Mark D. Temple
Mark D. Temple, *attorney in charge*
Texas Bar No. 00794727
S.D. Tex. No. 19552
811 Main Street, Suite 1100
Houston, Texas 77002
Phone: (713) 751-1316
Fax: (713) 751-1717
mtemple@bakerlaw.com

**OF COUNSEL**
BAKERHOSTTLER

**ATTORNEY FOR PETITIONERS**
**CHRISTOPHER F. WINCHENBAUGH**
**AND HUGH E. MCGEE, III**

**CERTIFICATE OF SERVICE**

      In accordance with the Federal Rules of Civil Procedure, I hereby certify that on July 29, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of this filing to the following:

> Mark D. Downey
> 1910 Pacific Ave, Suite 15650
> Dallas, Texas 75201
> mdowney@dlawgrp.com

                                                 */s/ Mark D. Temple*
                                                 Mark D. Temple